B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>CHRISTOPHER R. BARCLAY, Chapter 7 Trustee | DEFENDANTS<br>STEPHEN CAVADIAS, an individual and as the Trustee of THE CAVADIAS FAMILY 2003 TRUST; ROBERT ROSENBERG; VICKY ROSENBERG; VEY'S POWERSPORTS, INC. |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Finlayson Toffer Roosevelt & Lilly LLP<br>15615 Alton Parkway, Suite 270<br>Irvine, CA 92618<br>Phone: 949.759.3810 | **ATTORNEYS** (If Known)<br>Dennis Wickham<br>750 B Street, Suite 2100<br>San Diego, CA 92101<br>Phone: 619.685.3135 |

**PARTY** (Check One Box Only)

| Left | Right |
|---|---|
| ☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>☑ Trustee | ☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☑ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Breach of Fiduciary Duty; Negligence; Fraudulent Transfer, Preferential Transfer, Conversion

**NATURE OF SUIT**

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11 - Recovery of money/property - § 542 turnover of property
☑ 12 - Recovery of money/property - § 547 preference
☑ 13 - Recovery of money/property - § 548 fraudulent transfer
☐ 14 - Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21 - Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31 - Approval of sale of property of estate and of co-owner - § 363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41 - Objection / revocation of discharge - § 727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51 - Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66 - Dischargeability - § 523(a)(1),(14),(14A) priority tax claims
☐ 62 - Dischargeability - § 523(a)(2), false pretenses, false representation, actual fraud
☐ 67 - Dischargeability - § 523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61 - Dischargeability - § 523(a)(5), domestic support
☐ 68 - Dischargeability - § 523(a)(6), willful and malicious injury
☐ 63 - Dischargeability - § 523(a)(8), student loan
☐ 64 - Dischargeability - § 523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65 - Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71 - Injunctive relief - reinstatement of stay
☐ 72 - Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81 - Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91 - Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01 - Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§ 78aaa *et.seq.*
☑ 02 - Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☑ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 9,330,407.50 plus punitive damages |

Other Relief Sought
Monetary damages based on breach of fiduciary duty, negligence, and conversion.  Unauthorized postpetition transfer (11 U.S.C. § 549).

B1040 (Page 2) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>VEY'S BANDIT, LLC | | BANKRUPTCY CASE NO.<br>22-00294-CL7 |
| DISTRICT IN WHICH CASE IS PENDING<br>Southern | DIVISIONAL OFFICE | NAME OF JUDGE<br>Hon. Christopher B. Latham |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |

SIGNATURE OF ATTORNEY (OR PLAINTIFF)

/s/ Jesse S. Finlayson

| DATE<br>January 3, 2023 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Jesse S. Finlayson |
|---|---|

# INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and in the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature**. This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

B1040

JESSE S. FINLAYSON, SBN 179443
*jfinlayson@ftrlfirm.com*
SCOTT B. LIEBERMAN, SBN 208764
*slieberman@ftrlfirm.com*
**FINLAYSON TOFFER
ROOSEVELT & LILLY LLP**
15615 Alton Parkway, Suite 270
Irvine, CA 92618
Telephone:  949.759.3810
Facsimile:   949.759.3812

Attorneys for Christopher R. Barclay,
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 22-00294-CL7 |
| VEY'S BANDIT, LLC, | Chapter 7 |
| Debtor. | Adv. Proc. No. |

| | |
|---|---|
| CHRISTOPHER R. BARCLAY, chapter 7 trustee, | **COMPLAINT FOR:** |
| Plaintiff, | **(1) BREACH OF FIDUCIARY DUTY;** |
| v. | **(2) NEGLIGENCE;** |
| STEPHEN CAVADIAS, an individual and as the Trustee of THE CAVADIAS FAMILY 2003 TRUST; ROBERT ROSENBERG, an individual; VICKY ROSENBERG, an individual; VEY'S POWERSPORTS, INC., a California corporation, and DOES 1 through 50, inclusive, | **(3) FRAUDULENT TRANSFER [PREPETITION INVENTORY TRANSFER];** |
| | **(4) PREFERENTIAL TRANSFER [PREPETITION INVENTORY TRANSFER];** |
| Defendants. | **(5) FRAUDULENT TRANSFER [CAVADIAS CASH TRANSFER];** |
| | **(6) FRAUDULENT TRANSFER [ROSENBERG CASH TRANSFER];** |
| | **(7) CONVERSION / CIVIL THEFT [ROSENBERG CASH TRANSFER];** |

(8)  **FRAUDULENT TRANSFER [ADVENTURE TWINS TRANSFER];**

(9)  **CONVERSION / CIVIL THEFT [ADVENTURE TWINS TRANSFER];**

(10) **UNAUTHORIZED POSTPETITION TRANSFER;**

(11) **CONVERSION / CIVIL THEFT [UNAUTHORIZED POSTPETITION TRANSFER];**

(12) **VIOLATION OF THE AUTOMATIC STAY [UNAUTHORIZED POSTPETITION TRANSFER];**

(13) **CONVERSION / CIVIL THEFT [2013 MERCEDES SPRINTER VAN];**

(14) **VIOLATION OF THE AUTOMATIC STAY[2013 MERCEDES SPRINTER VAN]; AND**

(15) **AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFERS**

Plaintiff Christopher R. Barclay (the "Trustee"), the chapter 7 trustee for the bankruptcy estate of Vey's Bandit, LLC (the "Debtor"), files this Complaint against Defendants Stephen Cavadias, an individual and as the Trustee of the Cavadias Family 2003 Trust (the "Cavadias Trust"), Robert Rosenberg, Vicky Rosenberg, Vey's Powersports, Inc. ("Vey's Powersports"), and Does 1 through 50 (collectively, the "Defendants") and alleges as follows:

## INTRODUCTION

1.    This Complaint alleges a pattern of gross mismanagement, fraudulent conduct, and self-dealing by the Defendants.  As alleged below, the Debtor's management and owners repeatedly placed their own personal interests above those of the Debtor and creditors.  Most glaringly, the Debtor's management engaged in a fraudulent scheme to transfer more than $500,000 in inventory from the Debtor to its parent company, Vey's Powersports, in the months preceding the bankruptcy.  During the same time period, the Debtor's management caused the Debtor to engage in unethical and dishonest business practices, including misappropriating money from consumers by charging their credit cards and not shipping the purchased goods or timely refunding the amounts charged, which effectively destroyed the value of the Debtor's name brand and goodwill.  The Debtor's management then sought to hide their misconduct by submitting willfully false and misleading documents and testimony to the Trustee and the Bankruptcy Court.  As a result, of this misconduct, the Debtor sustained substantial damages as described herein.

## JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(1), 157(c)(1), and 1334(b).  This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C), (F), (H), and (O), or in the alternative, is related to the Debtor's bankruptcy proceeding pending before this Court under 28 U.S.C. § 157(c)(1).  This adversary proceeding arises under title 11 of the United States Code (the "Bankruptcy Code") and arises in a case under

1

1    the Bankruptcy Code pending before this Court.

2         3.    Venue of this adversary proceeding is properly before this Court pursuant

3    to 28 U.S.C. § 1409(a).

4         4.    This Complaint initiates an adversary proceeding within the meaning of

5    Federal Rule of Bankruptcy Procedure 7001.  Pursuant to Federal Rule of Bankruptcy

6    Procedure 7008(a), this adversary proceeding relates to the chapter 7 bankruptcy case

7    entitled *In re Vey's Bandit, LLC*, U.S.B.C. Case No. 22-00294-CL7, pending in the

8    United States Bankruptcy Court for the Southern District of California.

9         5.    Pursuant to Local Bankruptcy Rule 7008-1, the Trustee consents to entry

10   of final orders or judgment by the bankruptcy judge if any matters are determined to be

11   "core" within the meaning of 28 U.S.C. § 157.

12                    **PROCEDURAL BACKGROUND AND PARTIES**

13        6.    On February 7, 2022 (the "Petition Date"), the Debtor filed a Voluntary

14   Petition under chapter 7 of the Bankruptcy Code.

15        7.    The Trustee is the duly authorized representative of the Debtor's

16   bankruptcy estate pursuant to section 704 of the Bankruptcy Code.

17        8.    The Trustee is informed and believes, and on that basis alleges, that the

18   Debtor is a limited liability company organized and existing under the laws of the State

19   of California, with its principal place of business located in San Diego County,

20   California.

21        9.    The Trustee is informed and believes, and on that basis alleges, that

22   Stephen Cavadias is an individual residing in San Diego County, California, and the

23   Trustee of the Cavadias Trust.  The Trustee is further informed and believes, and on

24   that basis alleges, that, at all relevant times prior to the Petition Date, Stephen Cavadias

25   served as the Debtor's Chief Financial Officer and one of its two Managers.

26        10.   The Trustee is informed and believes, and on that basis alleges, that

27   Robert Rosenberg is an individual residing in San Diego County, California.  The

28   Trustee is further informed and believes, and on that basis alleges, that, at all relevant

times prior to the Petition Date, Robert Rosenberg served as the Debtor's President and one of its two Managers.

11.     The Trustee is informed and believes, and on that basis alleges, that Vicky Rosenberg is an individual residing in San Diego County, California.  The Trustee is further informed and believes, and on that basis alleges, that, at all relevant times prior to the Petition Date, Vicky Rosenberg served as the Debtor's Secretary.

12.     Stephen Cavadias, Robert Rosenberg, and Vicky Rosenberg are collectively referred to herein as the "Individual Defendants."

13.     The Trustee is informed and believes, and on that basis alleges, that Vey's Powersports is a corporation organized and existing under the laws of the State of California, with its principal place of business located in San Diego County, California.

14.     The Debtor is a single member LLC owned by Vey's Powersports.  At all relevant times, Vey's Powersports was and is 100% owned by Stephen Cavadias and his daughter, Vicky Rosenberg.  Robert Rosenberg is married to Vicky Rosenberg and is Stephen Cavadias' son-in-law.  The Debtor is, therefore, indirectly owned by the Cavadias family.

15.     The Trustee is informed and believes, and on that basis alleges, that Robert Rosenberg was and is the Chief Executive Officer of Vey's Powersports, Stephen Cavadias was and is the Chief Financial Officer of Vey's Powersports, and Vicky Rosenberg was and is the Secretary of Vey's Powersports.  Through their ownership and control of Vey's Powersports, the Cavadias family exercised complete control over the Debtor at all relevant times prior to the Petition Date.

16.     The Trustee is informed and believes, and on that basis alleges, that at all times herein mentioned each Defendant was acting as the agent, employee, principal, officer, partner, joint venturer, servant, director, or other representative of one or more of the remaining Defendants and, in committing the acts and/or omissions mentioned herein, was acting within the course and scope of such employment, agency,

3

partnership, joint venture or other relationship, and with the knowledge, consent, authorization, and ratification of the remaining Defendants.

17.    The Trustee is unaware of the true names and capacities of the Defendants sued herein as Does 1 through 50, inclusive, and therefore sues said Doe Defendants by such fictitious names.  The Trustee is informed and believes, and on that basis alleges, that each of the Doe Defendants are legally responsible in some manner for the events and happenings alleged herein, and that the damages alleged herein were proximately caused by their conduct.  The Trustee will seek leave of court to amend this Complaint to allege the Doe Defendants' true names and capacities when ascertained.

## GENERAL ALLEGATIONS

18.    The Trustee's claims for relief are based on the following general allegations.

**A.    The Genesis of the Bikebandit.com Business.**

19.    Prior to bankruptcy, the Debtor operated an online retail business: https://www.bikebandit.com.  The www.bikebandit.com website offered motorcycle parts and accessories for street and off-road motorcycles, cruisers, ATVs, and snowmobiles.

20.    The bikebandit.com business was founded in 1999.  The Trustee is informed and believes, and on the basis alleges, that over the next 10 to 15 years bikebandit.com became a successful and well-regarded online retail business selling primarily motorcycle parts and accessories for street motorcycles, cruisers, ATVs, and snowmobiles.

**B.    The Sale of the Bikebandit.com Business to BikeBandit, LLC.**

21.    In two transactions that occurred in 2013 and 2015, Bike Bandit, LLC acquired the bikebandit.com business from its founder and initial owner.  At all relevant times, Bike Bandit, LLC was owned or controlled by Affinity Development Group, Inc.

4

22.     After its acquisition, Bike Bandit, LLC owned and operated the bikebandit.com business for several years.

**C.     The Cavadias Family's Purchase of the Bikebandit.com Business and Formation of the Debtor.**

23.     In mid-2017, the Cavadias family agreed to purchase the bikebandit.com online retail business from Bike Bandit, LLC for $6,410,640.00.

24.     The Cavadias family formed the Debtor to act as the buyer in this transaction and, after the closing, to own and operate the bikebandit.com online retail business.  At all relevant times, Robert Rosenberg and Stephen Cavadias were the Debtor's sole Managers.  At all relevant times, Stephen Cavadias, Robert Rosenberg, and Vicky Rosenberg were the Debtor's officers and the individuals with responsibility for managing the operation of the Debtor's business.

25.     On or about June 2, 2017, the Debtor closed on its purchase of the bikebandit.com business.  There was no cash consideration paid at the time of the sale closing.  Instead, the entire approximate $6.4 million purchase price was funded through the Debtor's assumption of debt.  The debt assumed by the Debtor included approximately $2.6 million owed by Bike Bandit, LLC to Affinity Development Group, Inc.  Under the terms of the Purchase and Sale Agreement, the approximate $6.4 million purchase price was allocated among various assets, including cash, accounts receivable, inventory, fixed assets, goodwill and other intangibles.  Of these, the most valuable asset by far was the goodwill and other intangibles valued at $3,285,007.00.

26.     On or about June 2, 2017, and in connection with the purchase, the Debtor executed an Amended and Restated Promissory Note in the principal amount of $2,623,342.00 in favor of Affinity Development Group, Inc.  The Debtor also executed a Security Agreement purporting to grant Affinity Development Group, Inc. a first priority security interest on substantially all of the Debtor's assets.

5

27.     The Trustee is informed and believes, and on that basis alleges, that Stephen Cavadias, Robert Rosenberg, and Vicky Rosenberg each personally guaranteed the Debtor's assumed obligations to Affinity Development Group, Inc.

28.     At some point after the Promissory Note and Security Agreement were signed and the UCC-1 Financing Statement was filed, Affinity Development Group, Inc. assigned its rights under those documents to its affiliate, Vineyard Ranch, LLC.

**D.     The Debtor's Relationship with Vey's Powersports and the Cavadias Family.**

29.     As alleged above, Vey's Powersports is and, at all relevant times, has been the sole Member of the Debtor.  At all relevant times, Vey's Powersports was and is 100% owned by Stephen Cavadias and his daughter, Vicky Rosenberg.  At all relevant times, Robert Rosenberg, Stephen Cavadias, and Vicky Rosenberg were officers of Vey's Powersports.

30.     In addition to its ownership of the Debtor, Vey's Powersports owns and operates a motorcycle and ATV dealership located in El Cajon, California.  Vey's Powersports also sells replacement parts and accessories at its El Cajon dealership.

**E.     The Debtor's Change in Credit Card Processing Procedures.**

31.     In early 2020, the Debtor changed credit card processors.  The Trustee is informed and believes, and on that basis alleges, that at or about this same time, the Debtor made a significant change to the manner in which credit card orders were processed by the Debtor.  Under the prior credit card processor, a consumer placing an order would not have his or her credit card charged until the order actually shipped from the Debtor's warehouse.  After switching over to the new card processor, the Debtor's card charging practices changed:  A given consumer's credit card was charged immediately when the order was initially placed with the Debtor.  In the event there was a problem fulfilling the order, the Debtor was required to issue a refund to the consumer's credit card.

6

**F.**     **The Debtor's Unexplained Cash Payments to Stephen Cavadias.**

32.     On or about April 14, 2020, the Debtor paid Stephen Cavadias the sum of $34,000.00 via check.  On or about May 28, 2020, the Debtor paid Stephen Cavadias the sum of $30,000.00 via check.  On or about July 7, 2020, the Debtor paid Stephen Cavadias the sum of $30,000.00 via check.  The payments/transfers described in this paragraph are referred to collectively herein as the "Cavadias Cash Transfers."  In connection with the meeting of creditors pursuant to section 341(a) of the Bankruptcy Code, the Trustee requested the Debtor provide any documentation to support or explain the Cavadias Cash Transfers.  The Debtor's Controller informed the Trustee that the Debtor had no such records.

**G.**     **The Debtor's Improper Retention of Credit Card Payments and Collection of Sale Taxes on Phantom Sales.**

33.     In 2020, for about a six-month period of time beginning in late Spring and continuing through the Summer, the Debtor experienced a dramatic increase in monthly sales in comparison to its 2019 sales for the same months.  The Trustee is informed and believes, and on that basis alleges, that this significant increase in monthly sales was largely driven by an increase in outdoor activities due to the COVID-19 pandemic.

34.     The Debtor was unable to take advantage of this short term up-tick in business due, in part, to poor management, outdated equipment, and logistical challenges.  Instead, during this time, the Debtor accepted many more orders than it could realistically fulfill in a timely manner.  In addition, because of the change in the Debtor's credit card charging practices in early 2020, the Debtor charged the consumers' credit cards and collected sales taxes for each of these transactions.

35.     In short order, as the Debtor's financial situation continued to deteriorate, the Debtor lacked sufficient cash flow to meet its financial obligations.  The Debtor failed to promptly refund consumer charges on unfulfilled orders and, instead,  used those funds to pay the Debtor's operating expenses.

**H.    The Debtor Funds Robert Rosenberg's Greece Vacation.**

36.    In or about August 2020, Robert Rosenberg took a personal trip to Greece.  Shortly before leaving on this trip, Robert Rosenberg wrote a check to "CASH" from the Debtor's checking account in the amount of $12,277.50.  Robert Rosenberg converted these funds to Euros and used them as spending money during his personal Greece trip.  The payment/transfer described in this paragraph is referred to as the "Rosenberg Cash Transfer."

**I.    The Debtor's Management Rejects an Offer by Powersports Plus to Purchase the Bikebandit.com Business for as Much as $8.4 Million.**

37.    In late 2020, the Debtor engaged in discussions with Powersports Plus, LLC ("Powersports Plus") to sell the Debtor's inventory and certain intellectual property rights.  The Trustee is informed and believes, and on that basis alleges, that Powersports Plus is an affiliate of Outdoor Network, LLC, a holding company based in Albany, Georgia.  Despite the similar names, Powersports Plus is not associated in any way with Vey's Powersports.

38.    As a result of these discussions, the Debtor and Powersports Plus entered into a formal letter of intent dated December 11, 2020 (the "Powersports Plus LOI").  Robert Rosenberg signed the Powersports Plus LOI on or about December 16, 2020.

39.    Under the Powersports Plus LOI, Powersports Plus offered to pay the following amounts:

(a)    An amount not to exceed $4,000,000 to purchase the Debtor's inventory and other non-intellectual property assets based on a formula contained in the document.  This amount would be paid first "to pay all the parts vendors supplying [the Debtor] to bring their accounts current," with any excess paid to the Debtor.

(b)    An additional $1,000,000 for the Debtor's intellectual property.  Of this amount, the first $300,000 would be paid directly to "the vendor building the new website, to complete the website."  The remaining $700,000 would be

8

used to fund any operational losses in the first six months of Powersports Plus's

ownership and operation of the bikebandit.com website.  If the operational

losses during this time period were less than $700,000, the difference would be

paid to the Debtor.

(c)  An earnout between $2,300,000 and $3,400,000 paid over four

years if the actual sales on the bikebandit.com website totaled between 70% and

100% of the Debtor's projections.

The total possible consideration to the Debtor under the Powersports Plus LOI was

$8,400,000.  Of this amount, a substantial portion (possibly as much as $4,300,000)

would have been paid directly to the Debtor's creditors to bring their accounts current

at the closing.

39.     The Debtor chose not to proceed with the potential sale to Powersports

Plus.  The Trustee is informed and believes, and on that basis alleges, that Stephen

Cavadias and Robert Rosenberg made this decision because they wanted more money

for themselves.  The Trustee is further informed and believes, and on that basis alleges,

that Stephen Cavadias and Robert Rosenberg were dissatisfied with the Powersports

Plus offer because a substantial portion of the purchase price for the Debtor's assets

offered by Powersports Plus would go directly to the Debtor's creditors rather than to

the Cavadias family.

**J.    Vey's Powersports Intercepts the Debtor's Adventure Twins, LLC
Distribution and Funnels a Portion to Stephen Cavadias.**

40.     Prior to the Petition Date, the Debtor owned a 49% membership interest

in Adventure Twins LLC ("Adventure Twins").  Adventure Twins was a joint venture

between the Debtor and NCY Holdings, Inc. formed in November 2019.

41.     On or about December 30, 2020, Adventure Twins issued a distribution

check to the Debtor in the amount of $73,500 representing the Debtor's share of the

joint venture's profits.

42.    The following day, the $73,500 Adventure Twins distribution check was intercepted and deposited directly into the checking account of Vey's Powersports (the "Adventure Twin Transfer").  A short time later, $50,000 of this amount was transferred to Stephen Cavadias.

**K.    The Debtor's Continuing Slide into Bankruptcy.**

43.    On or about February 5, 2021, Vineyard Ranch, LLC sent a default letter to the Debtor.

44.    In late May 2021, the Debtor engaged the Law Office of Michael T. O'Halloran as insolvency counsel.

**L.    The Debtor Continues to Misappropriate Consumers' Credit Card Payments and Sales Taxes Paid on those Phantom Transactions.**

45.    The Debtor's December 31, 2020 balance sheet reflects a liability for customer deposits of $0.  By December 31, 2021, this amount had ballooned to approximately $646,000.

46.    The Trustee is informed and believes, and on that basis alleges, that as of the Petition Date, the Debtor had received credit card payments from approximately 3,400 consumers who placed orders with the Debtor that were never fulfilled or refunded.  As a result, the Trustee is further informed and believes, and on that basis alleges, that the Debtor effectively misappropriated approximately $646,000 from these consumer creditors.

47.    The Debtor's decision to use customer deposits and the sales taxes collected on those phantom sales to help defray the company's deepening operating losses severely damaged the bikebandit.com brand and the value of the Debtor's assets. As a result of these unethical actions, the Debtor suffered numerous bad reviews and complaints made both online and to consumer protection agencies and/or law enforcement officials.

**M.**     <u>Vineyard Ranch, LLC Rejects the Debtor's "Friendly Foreclosure" Proposal</u>.

48.     In Fall 2021, the Debtor's management approached Vineyard Ranch, LLC about a possible "friendly foreclosure" sale of the Debtor's assets and eventual resumption of operations post-foreclosure. In concept, the Debtor proposed that Vineyard Ranch, LLC would foreclose on the Debtor's assets, eliminate the Debtor's unsecured and junior secured debt, and then sell the Debtor's assets to a newly-created entity owned and controlled by the Cavadias family. This proposal was rejected by Vineyard Ranch, LLC, who demanded that the Debtor pay the amount due or that Stephen Cavadias, Robert Rosenberg, and Vicky Rosenberg honor their personal guarantees.

**N.**     <u>The Debtor's Prepetition Inventory Transfer to Vey's Powersports</u>.

49.     At about the same time, Robert Rosenberg directed the Debtor to transfer a substantial portion of the Debtor's inventory to Vey's Powersports for no consideration. Beginning in or about August through approximately November 2021, the Debtor systematically transferred inventory with a combined fair market value of $565,500 to Vey's Powersports (the "Prepetition Inventory Transfers").

50.     The fair market value of the property transferred from the Debtor to Vey's Powersports as part of the Prepetition Inventory transfer was approximately $565,000 at the time of the transfers.

51.     The Prepetition Inventory Transfers were made at the express direction of Robert Rosenberg, and the Trustee is informed and believes, and on that basis alleges, with the knowledge and consent of Stephen Cavadias.

52.     At the same time the Debtor was actively preparing to file for bankruptcy protection, its management was busy looting the Debtor's most valuable remaining assets through the Prepetition Inventory Transfers for the benefit of Vey's Powersports and, ultimately, the Cavadias family.

11

53.    There were discussions among the Debtor's management team and accounting department at or about the time of the Prepetition Inventory Transfers to the effect that the transfers were being done to pay down the Debtor's intercompany debt to Vey's Powersports.  In fact, the Debtor's intercompany debt to Vey's Powersport was never actually credited with any deduction on account of the Prepetition Inventory Transfers.  Instead, the Debtor simply "wrote down" the amount of its inventory on its books in an apparent attempt to conceal evidence of the Prepetition Inventory Transfers.

**O.    The Debtor Shuts Down in Business in Preparation for Bankruptcy.**

54.    Having largely completed the Prepetition Inventory Transfer to Vey's Powersports, the Debtor commenced a plan to terminate its operations and warehouse staff beginning in late November 2021 and essentially shut down the business.

55.    The Debtor terminated the majority of its administrative staff in early December 2021.

56.    On December 13, 2021, Vineyard Ranch, LLC issued a default/payment demand letter to Stephen Cavadias, Robert Rosenberg, and Vicky Rosenberg.

**P.    The Cavadias Trust's Acquisition of the Via Orange Way Facility.**

57.    Beginning in mid-2020, the Debtor's business operated primarily out of an office/warehouse facility located at 2780 Via Orange Way, Spring Valley, California (the "Via Orange Way Facility").  At the time the Debtor moved its business to the Via Orange Way Facility, the property was owned by a third-party lessor.  At the time of the move, Stephen Cavadias acquired an option to purchase the Via Orange Way Facility from the owner.  Stephen Cavadias paid nothing for the option.  The Option Agreement granted Stephen Cavadias an exclusive 18-month period to exercise the option and purchase the Via Orange Way Property.

58.    In the Fall of 2021, Stephen Cavadias as the Trustee of the Cavadias Trust exercised the option to purchase the Via Orange Way Facility.

59.     On or about December 3, 2021, the Cavadias Trust closed on its purchase of the Via Orange Way Facility.  On the same day, and despite significant financial distress, the Debtor executed a month-to-month Commercial Lease Agreement for the Via Orange Way Facility, under which the Debtor agreed to pay the Cavadias Trust $34,000 per month.

60.     On December 13, 2021, Robert Rosenberg sent a letter on the Debtor's behalf to Stephen Cavadias terminating the Debtor's Commercial Lease Agreement of the Via Orange Way Facility (that was entered into just 10 days earlier).

**Q.**    **The Debtor Files Bankruptcy and Fails to Disclose the Prepetition Inventory Transfer to Vey's Powersports and the Identity of the Consumer Creditors.**

61.     On February 7, 2022, the Debtor filed its Voluntary Chapter 7 Petition, Schedules of Assets and Liabilities, and Statement of Financial Affairs.  The Debtor's Schedules and Statement of Financial Affairs were signed under penalty of perjury by Robert Rosenberg.

62.     The Trustee was appointed the same day.

63.     In an effort to conceal its fraudulent conduct, the Debtor intentionally omitted approximately 3,400 consumer claims from its Schedules.

64.     The Debtor also deliberately failed to disclose the Prepetition Inventory Transfers to Vey's Powersports in its Statement of Financial Affairs.

65.     Shortly after the Petition Date, the Trustee reviewed the Debtor's Schedules and questioned the Debtor's counsel as to why there were no consumer creditors listed.  As a result of these inquiries, one of the Debtor's employees sent an email to Robert Rosenberg asking about the unscheduled consumer creditors.  Robert Rosenberg responded almost immediately:  "We don't owe any one [sic] That's it Over – [.]"

66.     Approximately one month later on March 23, 2022, the Trustee questioned Robert Rosenberg under oath during the Debtor's meeting of creditors

13

pursuant to section 341(a) of the Bankruptcy Code. During this testimony, Robert Rosenberg claimed that the Debtor lacked the ability to list or otherwise disclose the consumer claims in the Schedules because it no longer had access to the underlying customer order information. As explained below, this testimony was demonstrably false and misleading.

**R.**    **The Debtor's Unauthorized Postpetition Inventory Transfer for the Benefit of Steven Cavadias.**

67.    Shortly after the Petition Date, the Trustee visited the Via Orange Way Facility to, among other things, inspect the Debtor's inventory.

68.    After the Trustee's initial visit, Stephen Cavadias caused the Debtor to transfer inventory belonging to the Debtor to a repairman/painter to satisfy a debt owed by the Cavadias Trust (the "Unauthorized Postpetition Inventory Transfer"). The Unauthorized Postpetition Inventory Transfer constituted an unauthorized and unlawful transfer of property of the Debtor's bankruptcy estate. Stephen Cavadias and the Cavadias Trust neither sought nor obtained approval from the Court before causing the Debtor to make the Unauthorized Postpetition Inventory Transfer to the repairman/painter. The Trustee is informed and believes, and on that basis alleges, that the Unauthorized Postpetition Inventory Transfer included inventory belonging to the Debtor's bankruptcy estate with a fair market value of approximately $24,300.

**S.**    **Vey's Powersports' Unauthorized Sale of the Debtor's 2013 Mercedes Sprinter Van.**

69.    On the Petition Date, the Debtor owned a 2013 Mercedes Sprinter van and a 2012 Ford F-250 truck. Neither vehicle was disclosed in the Debtor's Schedules signed by Robert Rosenberg under penalty of perjury and filed with the Debtor's Petition.

70.    The Trustee uncovered the Debtor's ownership of both the 2013 Mercedes Sprinter van and 2012 Ford F-250 truck through his investigation in this case.

14

71.     On October 10, 2022, the Debtor filed Amended Schedules admitting ownership of the 2012 Ford F-250 truck.

72.     On December 8, 2022, the Trustee filed a Notice of Intended Action seeking approval to sell the 2012 Ford F-250 truck to Robert Rosenberg for the sale price of $26,000.

73.     The Trustee is informed and believes, and on that basis alleges, Vey's Powersports held bare legal title to the 2013 Mercedes Sprinter van.  The Trustee is further informed and believes, and on that basis alleges, that shortly after the Petition Date, Vey's Powersports sold the 2013 Mercedes Sprinter van for an undisclosed amount and retained the sale proceeds.  Vey's Powersports has refused to turn over the sale proceeds from the 2013 Mercedes Sprinter van to the Trustee despite the Trustee's demands.

**T.     The Trustee's Postpetition Asset Sale to Powersports Plus for $389,250.**

74.     On or about May 17, 2022, the Trustee entered into a Purchase and Sale Agreement with Powersports Plus to sell the Debtor's inventory and certain intellectual property rights for $410,000.00 (the "Powersports Plus PSA").  The Trustee's proposed sale to Powersports Plus sale was subject to overbidding and approval by this Court. The Trustee filed a motion to approve the sale to Powersports Plus and scheduled a hearing on the approval motion for July 1, 2022.

75.     At the time the Trustee entered into the Powersports Plus PSA, both the Trustee and Powersports Plus were unaware of the Unauthorized Postpetition Inventory Transfer to the repairman/painter.

76.     The Trustee discovered the Unauthorized Postpetition Inventory Transfer of the Debtor's inventory to the repairman/painter prior to the July 1, 2022 hearing on the Trustee's Motion to Approval the Sale.

77.     On July 1, 2022, this Court approved the Trustee's proposed sale to Powersports Plus.  During the July 1 sale hearing, the Trustee's counsel informed the

15

Court about the inventory that had been transferred to the repairman/painter postpetition without the Trustee's knowledge or Court approval.  The Trustee's counsel indicated that the Trustee would further investigate and attempt to resolve the issue post-closing with Powersports Plus.

78.    On July 5, 2022, the Trustee's sale to Powersports Plus closed.

79.    On August 2, 2022, the Trustee and Powersports Plus entered into an Amendment to the Purchase and Sale Agreement.  Under that Amendment, the Trustee agreed to sell Powersports Plus certain miscellaneous computer equipment for an additional $3,550 and refund $24,300 of the purchase price to Powersports Plus to compensate for the "missing" inventory due to the Unauthorized Postpetition Inventory Transfer.

80.    On September 1, 2022, the Bankruptcy Court approved the Amendment to the Powersports Plus Purchase and Sale Agreement.

81.    Ultimately, the net purchase price paid by Powersports Plus was reduced to $389,250—a fraction of the amount offered by Powersports Plus and rejected by the Debtor's management in December 2020.

**U.    The Debtor's Counsel Withdraws and the Debtor Finally Amends Its Schedules to Include the Omitted Consumer Creditors.**

82.    On June 29, 2022, The Law Office of Michael T. O'Halloran filed Motion to Withdraw as the Debtor's counsel.  In support of the Motion to Withdraw, Michael T. O'Halloran filed a Declaration citing, among other grounds:  [T]he Firm no longer has confidence in its communication with the Client" and "[t]he Firm does not have adequate confidence in the Client's credibility in all matters."

83.    On August 3, 2022, the Bankruptcy Court granted the Motion to Withdraw.

84.    On October 13, 2022, after months of prodding by the Trustee and the withdrawal of its initial attorney, the Debtor finally filed Amended Schedules listing the consumer creditors.  The Amended Schedules establish that Robert Rosenberg's

testimony during the meeting of creditors pursuant to section 341(a) of the Bankruptcy Code that the Debtor lacked the ability to list or otherwise disclose the consumer claims in the Schedules, because it did not possess the underlying customer order information, was false and misleading.

**W.    The Debtor's Preferential Payments to Vey's Powersports.**

85.    Within one year before the Petition Date, the Debtor made the following payments to Vey's Powersports:  (a) loan payments totaling approximately $103,724.00; and (b) payments totaling approximately $457,606.00 arising out of the Debtor's purchase of parts and inventory from Vey's Powersports (collectively, the "Preferential Payments").

## FIRST CLAIM FOR RELIEF

### (Breach of Fiduciary Duty – Against the Individual Defendants)

86.    The Trustee incorporates by reference the allegations of paragraphs 1 through 85, inclusive, as if fully set forth herein.

87.    In their roles as officers and/or managers of the Debtor, the Individual Defendants each owed fiduciary duties of loyalty, care, and good faith to the Debtor.

88.    While the Debtor was insolvent, the Individual Defendants, in their roles as officers and/or managers, each owed fiduciary duties of loyalty, care, and good faith to the Debtor's creditors.

89.    The Individual Defendants were and are required to use their abilities to control and manage the Debtor in a fair, just, and equitable manner in order to ensure that the company complied with applicable laws and contractual obligations, to refrain from abusing their positions of control, and not to favor their own interests at the expense of the Debtor.

90.    The Individual Defendants violated their fiduciary duties to the Debtor and the Debtor's creditor, including without limitation their duties of care, good faith, honesty and loyalty by, among other things:

17

(a)     Implementing a plan to loot the Debtor's inventory in the months prior to bankruptcy through the Prepetition Inventory Transfers to Vey's Powersports;

(b)     Causing the Debtor to make various illegal and/or fraudulent cash transfers to Robert Rosenberg and Stephen Cavadias at a time when the Debtor was clearly insolvent and unable to pay its legitimate non-insider debts;

(c)     Diverting the Debtor's $73,500 December 2020 distribution from Adventure Twins to Vey's Powersports and then transferring the bulk of those funds to Stephen Cavadias;

(d)     Rejecting or failing to pursue Powersports Plus's prepetition offer to purchase the bikebandit.com business because most of the purchase price would have gone directly to the Debtor's legitimate non-insider creditors and not the Individual Defendants;

(e)     Grossly mismanaging the Debtor's business, including misappropriating money from consumers by not promptly refunding credit card charges when it became apparent that the Debtor could not fulfill certain orders and collecting and retaining sales taxes on these phantom sales to fund the Debtor's operating losses, which in turn enormously damaged the value of the bikebandit.com domain and the Debtor's goodwill;

(f)     Placing their own personal interests above those of the Debtor; and

(g)     Providing false and inaccurate information in the Debtor's Schedules and Statement of Financial Affairs in an effort to conceal their misconduct.

91.     The Trustee is informed and believes, and on that basis alleges, that Stephen Cavadias claims that he was not directly involved in any of the misconduct described above and also claims that he played little or no active role in the Debtor's management.  The Trustee is further informed and believes, and on that basis alleges, that Vicky Rosenberg may make similar claims about not being involved in the

Debtor's management or the other wrongdoing described in this Complaint.  To the extent these assertions are correct, the Trustee alleges that Stephen Cavadias and Vicky Rosenberg violated their fiduciary duties to the Debtor and the Debtor's creditors by failing to adequately oversee the Debtor's business and essentially abdicating their duties and obligations to Robert Rosenberg.

92.    The wrongful conduct by the Individual Defendants described in this Complaint was not due to an honest error in judgment, but rather to the Individual Defendants' gross mismanagement, bad faith, and/or reckless disregard of the rights and interests of the Debtor and its creditors and for acting without the reasonable and ordinary care which they owed the Debtor.

93.    As a result of the foregoing, the Individuals Defendants have participated in harming the Debtor and have breached fiduciary duties owed to the Debtor.  Further, the Individual Defendants knowingly aided, encouraged, cooperated and/or participated in, and substantially assisted the other Defendants in the breaches of their fiduciary and other legal duties to the Debtor.

94.    The wrongful conduct of the Individual Defendants was willful, malicious, fraudulent and oppressive, and in conscious disregard of their legal duties. The Trustee is therefore entitled to punitive and exemplary damages in an amount that will punish the Individual Defendants, set an example, and deter similar conduct in the future.

95.    By reason of the foregoing, the Debtor and the bankruptcy estate have sustained and will continue to sustain substantial damages and injuries in an amount subject to proof at trial but not less than $8,000,000.

## SECOND CLAIM FOR RELIEF

### (Negligence – Against the Individual Defendants)

96.    The Trustee incorporates by reference the allegations of paragraphs 1 through 95, inclusive, as if fully set forth herein.

19

97.    At a minimum, the Individual Defendants, in their capacities as officers and/or managers and/or otherwise, owed an ordinary duty of care to the Debtor to act in an honest and competent manner.

98.    The Individual Defendants breached their duties of care and were negligent in their conduct, acts, and omissions.  It was reasonably foreseeable that the Individual Defendants' negligence would cause the Debtor harm.

99.    As a direct and proximate result of the Individual Defendants' acts and omissions, the Debtor was damaged in an amount subject to proof at trial but not less than $8,000,000.

## THIRD CLAIM FOR RELIEF

### (Avoid and Recover Fraudulent Transfer Under 11 U.S.C. §  548 and 550 [Prepetition Inventory Transfer] – Against Vey's Powersports, Stephen Cavadias, and Vicky Rosenberg)

100.    The Trustee incorporates by reference the allegations of paragraphs 1 through 99, inclusive, as if fully set forth herein.

101.    The Prepetition Inventory Transfers constitute transfers of an interest of the Debtor in property.

102.    The Prepetition Inventory Transfers were made to Vey's Powersports and for the benefit of Stephen Cavadias and Vicky Rosenberg, the 100% owners of Vey's Powersports.

103.    The Debtor made the Prepetition Inventory Transfers to Vey's Powersports with the actual intent to hinder, delay, or defraud one or more of its creditors.

104.    The Debtor received less than a reasonably equivalent value in exchange for the Prepetition Inventory Transfers.

105.    The Debtor was (a) insolvent at the time of the Prepetition Inventory Transfers, or became insolvent as a result of the Prepetition Inventory Transfers, or

(b) intended to incur or believed that it would incur debts that would be beyond its ability to pay as such debts matured at the time of the Prepetition Inventory Transfers.

106.   The Prepetition Inventory Transfers constitute fraudulent transfers which should be avoided pursuant to section 548 of the Bankruptcy Code.  Recovery of the property transferred as part of the Prepetition Inventory Transfer is impractical or impossible.  As such, the Trustee seeks to recover the value of the property transferred as part of the Prepetition Inventory Transfer jointly and severally from Vey's Powersports, Stephen Cavadias, and Vicky Rosenberg pursuant to section 550(a) of the Bankruptcy Code.

### FOURTH CLAIM FOR RELIEF

**(Avoid and Recover Preferential Transfer Under 11 U.S.C. §  547 and 550 [Prepetition Inventory Transfer] – Against Vey's Powersports, Stephen Cavadias, and Vicky Rosenberg)**

107.   The Trustee incorporates by reference the allegations of paragraphs 1 through 106, inclusive, as if fully set forth herein.

108.   The Prepetition Inventory Transfers were made within one year prior to the Petition Date.

109.   The Prepetition Inventory Transfers were transfers of an interest of the Debtor in property.

110.   The Prepetition Inventory Transfers were made to Vey's Powersports and for the benefit of Stephen Cavadias and Vicky Rosenberg, the 100% owners of Vey's Powersports.

111.   Vey's Powersports, Stephen Cavadias, and Vicky Rosenberg are each insiders of the Debtor within the meaning of section 101(31) of the Bankruptcy Code.

112.   The Prepetition Inventory Transfers were made while the Debtor was insolvent.

113.   The Prepetition Inventory Transfers enabled Vey's Powersports to receive more than it would receive if: (a) the Debtor's bankruptcy were a case under chapter 7

21

of the Bankruptcy Code; (b) the Prepetition Inventory Transfers had not been made; and (c) Vey's Powersports received payment on account of the alleged debt paid by the Prepetition Inventory Transfers to the extent provided by the provisions of the Bankruptcy Code.

114. The Trustee is informed and believes, and on that basis alleges, that the Defendants may contend that the Prepetition Inventory Transfers were made for or on account of antecedent debts owed to one or more of them by the Debtor when such transfers were made. To the extent the Defendants' assertions are true, the Transfers constitute preferential transfers which should be avoided as preferences pursuant to section 547 of the Bankruptcy Code.

115. Recovery of the property transferred as part of the Prepetition Inventory Transfer is impractical or impossible. As such, the Trustee seeks to recover the value of the property transferred as part of the Prepetition Inventory Transfer jointly and severally from Vey's Powersports, Stephen Cavadias, and Vicky Rosenberg pursuant to section 550(a) of the Bankruptcy Code.

## FIFTH CLAIM FOR RELIEF

### (Avoid and Recover Fraudulent Transfer Under 11 U.S.C. § 548 and 550 [Cavadias Cash Transfers] – Against Stephen Cavadias)

116. The Trustee incorporates by reference the allegations of paragraphs 1 through 115, inclusive, as if fully set forth herein.

117. The Cavadias Cash Transfers constitute transfers of an interest of the Debtor in property.

118. The Cavadias Cash Transfers were made within two years prior to the Petition Date.

119. The Cavadias Cash Transfers were made to Stephen Cavadias.

120. Stephen Cavadias is an insider of the Debtor within the meaning of section 101(31) of the Bankruptcy Code.

121.   The Debtor made the Cavadias Cash Transfers to Stephen Cavadias with the actual intent to hinder, delay, or defraud one or more of its creditors.

122.   The Debtor received less than a reasonably equivalent value in exchange for the Cavadias Cash Transfers.

123.   The Debtor was (a) insolvent at the time of the Cavadias Cash Transfers, or became insolvent as a result of the Cavadias Cash Transfers, or (b) intended to incur or believed that it would incur debts that would be beyond its ability to pay as such debts matured at the time of the Cavadias Cash Transfers.

124.   The Cavadias Cash Transfers constitute fraudulent transfers which should be avoided pursuant to section 548 of the Bankruptcy Code.  The Trustee seeks to recover the Cavadias Cash Transfers from Stephen Cavadias pursuant to section 550(a) of the Bankruptcy Code.

## SIXTH CLAIM FOR RELIEF

**(Avoid and Recover Fraudulent Transfer Under 11 U.S.C. §  548 and 550 [Rosenberg Cash Transfer] – Against Robert Rosenberg)**

125.   The Trustee incorporates by reference the allegations of paragraphs 1 through 124, inclusive, as if fully set forth herein.

126.   The Rosenberg Cash Transfer constitutes a transfer of an interest of the Debtor in property.

127.   The Rosenberg Cash Transfer was made within two years prior to the Petition Date.

128.   The Rosenberg Cash Transfer was made to Robert Rosenberg.

129.   Robert Rosenberg is an insider of the Debtor within the meaning of section 101(31) of the Bankruptcy Code.

130.   The Debtor made the Rosenberg Cash Transfer to Robert Rosenberg with the actual intent to hinder, delay, or defraud one or more of its creditors.

131.   The Debtor received less than a reasonably equivalent value in exchange for the Rosenberg Cash Transfer.

23

132.   The Debtor was (a) insolvent at the time of the Rosenberg Cash Transfer, or became insolvent as a result of the Rosenberg Cash Transfer, or (b) intended to incur or believed that it would incur debts that would be beyond its ability to pay as such debts matured at the time of the Rosenberg Cash Transfer.

133.   The Rosenberg Cash Transfer constitutes a fraudulent transfer which should be avoided pursuant to section 548 of the Bankruptcy Code.  The Trustee seeks to recover the Rosenberg Cash Transfer from Robert Rosenberg pursuant to section 550(a) of the Bankruptcy Code.

## SEVENTH CLAIM FOR RELIEF

### (Conversion /Civil Theft [Rosenberg Cash Transfer] – Against Robert Rosenberg)

134.   The Trustee incorporates by reference the allegations of paragraphs 1 through 133, inclusive, as if fully set forth herein.

135.   The funds transferred to Robert Rosenberg as part of the Rosenberg Cash Transfer were property of the Debtor.

136.   Robert Rosenberg intentionally and substantially interfered with the Debtor's property rights by taking these funds and misappropriating them for his own personal use and enjoyment.

137.   The Trustee is informed and believes, and on that basis alleges, that the Debtor did not consent to Robert Rosenberg taking the funds at issue for his own personal use.

138.   Robert Rosenberg's conduct described in this Claim for Relief and above was willful, malicious, fraudulent and oppressive, and in conscious disregard of his legal duties.  The Trustee is therefore entitled to punitive and exemplary damages in an amount that will punish Robert Rosenberg, set an example, and deter similar conduct in the future.

139.   The Debtor has been damaged in the amount of $12,277.50 as a result of Robert Rosenberg's actions in converting and misappropriating the funds subject to the Rosenberg Cash Transfer.

## EIGHTH CLAIM FOR RELIEF

**(Avoid and Recover Fraudulent Transfer Under 11 U.S.C. §  548 and 550 [Adventure Twins Transfer] – Against Vey's Powersports, Stephen Cavadias, and Vicky Rosenberg)**

140.   The Trustee incorporates by reference the allegations of paragraphs 1 through 139, inclusive, as if fully set forth herein.

141.   The Adventure Twins Transfer constitutes a transfer of an interest of the Debtor in property.

142.   The Adventure Twins Transfer was made within two years prior to the Petition Date.

143.   The Adventure Twins Transfer was made to Vey's Powersports and for the benefit of Stephen Cavadias and Vicky Rosenberg, the 100% owners of Vey's Powersports.  Stephen Cavadias is a subsequent transferee with respect to $50,000 of the Adventure Twins Transfer.

144.   Vey's Powersports, Stephen Cavadias, and Vicky Rosenberg are each insiders of the Debtor within the meaning of section 101(31) of the Bankruptcy Code.

145.   The Debtor made the Adventure Twins Transfer to Vey's Powersports with the actual intent to hinder, delay, or defraud one or more of its creditors.

146.   The Debtor received less than a reasonably equivalent value in exchange for the Adventure Twins Transfer.

147.   The Debtor was (a) insolvent at the time of the Adventure Twins Transfer, or became insolvent as a result of the Adventure Twins Transfer, or (b) intended to incur or believed that it would incur debts that would be beyond its ability to pay as such debts matured at the time of the Adventure Twins Transfer.

148.   The Adventure Twins Transfer constitutes a fraudulent transfer which should be avoided pursuant to section 548 of the Bankruptcy Code.  The Trustee seeks to recover the Adventure Twins Transfer from Vey's Powersport, Stephen Cavadias, and Vicky Rosenberg pursuant to section 550(a) of the Bankruptcy Code.

**NINTH CLAIM FOR RELIEF**

**(Conversion / Civil Theft [Adventure Twins Transfer] – Against Vey's Powersports and Stephen Cavadias)**

149.   The Trustee incorporates by reference the allegations of paragraphs 1 through 148, inclusive, as if fully set forth herein.

150.   The funds transferred to Vey's Powersports and then forwarded to Stephen Cavadias as part of the Adventure Twins Transfer were property of the Debtor.

151.   Vey's Powersports and/or Stephen Cavadias intentionally and substantially interfered with the Debtor's property rights by taking these funds and misappropriating them for their own personal use and enjoyment.

152.   The Trustee is informed and believes, and on that basis alleges, that the Debtor did not consent to the Adventure Twins Transfer.

153.   The conduct of Vey's Powersports and Stephen Cavadias described in this Claim for Relief and above was willful, malicious, fraudulent and oppressive, and in conscious disregard of their legal duties.  The Trustee is therefore entitled to punitive and exemplary damages in an amount that will punish Robert Rosenberg, set an example, and deter similar conduct in the future.

154.   The Debtor has been damaged in the amount of $73,500 as a result of the actions of Vey's Powersports in converting and misappropriating the funds subject to the Adventure Twins Transfer.

**<u>TENTH CLAIM FOR RELIEF</u>**

**(Avoidance and Recovery of Unauthorized Postpetition Transfer**

**under 11 U.S.C. § 549 and 550 – Against the Cavadias Trust and**

**Stephen Cavadias)**

155.    The Trustee incorporates by reference the allegations of paragraphs 1 through 154, inclusive, as if fully set forth herein.

156.    The Unauthorized Postpetition Inventory Transfer occurred after the Petition Date.

157.    The Unauthorized Postpetition Inventory Transfer was a transfer of property of the Debtor's bankruptcy estate.

158.    The Unauthorized Postpetition Inventory Transfer was not authorized by the Bankruptcy Code or the Bankruptcy Court.

159.    The Unauthorized Postpetition Inventory Transfer was made for the benefit of the Cavadias Trust and Stephen Cavadias.

160.    The Unauthorized Postpetition Inventory Transfer constitutes an unauthorized postpetition transfer of property of the bankruptcy estate which should be avoided pursuant to section 549 of the Bankruptcy Code.  The Trustee seeks to recover the amount of the Unauthorized Postpetition Transfer from the Cavadias Trust and Stephen Cavadias pursuant to section 550(a) of the Bankruptcy Code.

**<u>ELEVENTH CLAIM FOR RELIEF</u>**

**(Conversion / Civil Theft [Unauthorized Postpetition Transfer] –**

**Against the Cavadias Trust and Stephen Cavadias)**

161.    The Trustee incorporates by reference the allegations of paragraphs 1 through 160, inclusive, as if fully set forth herein.

162.    The property transferred to the repairman/painter as part of the Unauthorized Postpetition Transfer was property of the Debtor's bankruptcy estate under section 541(a) of the Bankruptcy Code.

163.   Stephen Cavadias and/or the Cavadias Trust intentionally and substantially interfered with the bankruptcy estate's property rights by taking control of the inventory and giving it to the repairman/painter to pay their repair bill.

164.   The Trustee did not consent to the Unauthorized Postpetition Transfer.

165.   The bankruptcy estate has been damaged in the amount of $24,300 as a result of the actions of Stephen Cavadias and the Cavadias Trust in converting and misappropriating the inventory as a result of the Unauthorized Postpetition Inventory Transfer.

166.   The conduct of Stephen Cavadias and the Cavadias Trust described in this Claim for Relief and above was willful, malicious, fraudulent and oppressive, and in conscious disregard of their legal duties.  The Trustee is therefore entitled to punitive and exemplary damages in an amount that will punish Stephen Cavadias and the Cavadias Trust, set an example, and deter similar conduct in the future.

## TWELFTH CLAIM FOR RELIEF

### (Violation of the Automatic Stay [Unauthorized Postpetition Inventory Transfer] – Against the Cavadias Trust and Stephen Cavadias)

167.   The Trustee incorporates by reference the allegations of paragraphs 1 through 166, inclusive, as if fully set forth herein.

168.   The property transferred to the repairman/painter as part of the Unauthorized Postpetition Transfer was property of the Debtor's bankruptcy estate under section 541(a) of the Bankruptcy Code.

169.   The Unauthorized Postpetition Inventory Transfer violated the automatic stay under section 362 of the Bankruptcy Code in the Debtor's bankruptcy case.

170.   Stephen Cavadias and the Cavadias Trust's stay violation was willful and done in complete disregard of the Bankruptcy Code.

171.   The Debtor's bankruptcy estate was damaged by the stay violation and is entitled to recover damages, plus attorneys' fees and appropriate sanctions.

## THIRTEENTH CLAIM FOR RELIEF

### (Conversion / Civil Theft [2013 Mercedes Sprinter Van] – Against

### Vey's Powersports)

172.   The Trustee incorporates by reference the allegations of paragraphs 1 through 171, inclusive, as if fully set forth herein.

173.   The 2013 Mercedes Sprinter van was property of the Debtor's bankruptcy estate under section 541(a) of the Bankruptcy Code.

174.   Vey's Powersports intentionally and substantially interfered with the bankruptcy estate's property rights by taking control of the 2013 Mercedes Sprinter van and selling it.

175.   The Trustee did not consent to the sale of the 2013 Mercedes Sprinter van.

176.   The bankruptcy estate has been damaged in an amount subject to proof at trial as a result of Vey's Powersports' sale of the 2013 Mercedes Sprinter van.

177.   The conduct of Vey's Powersports described in this Claim for Relief and above was willful, malicious, fraudulent and oppressive, and in conscious disregard of its legal duties.  The Trustee is therefore entitled to punitive and exemplary damages in an amount that will punish Vey's Powersports, set an example, and deter similar conduct in the future.

## FOURTEENTH CLAIM FOR RELIEF

### (Violation of the Automatic Stay [2013 Mercedes Sprinter Van] –

### Against Vey's Powersports)

178.   The Trustee incorporates by reference the allegations of paragraphs 1 through 177, inclusive, as if fully set forth herein.

179.   The 2013 Mercedes Sprinter van was property of the Debtor's bankruptcy estate under section 541(a) of the Bankruptcy Code.

180.   Vey's Powersports' sale of the 2013 Mercedes Sprinter van violated the automatic stay under section 362 of the Bankruptcy Code in the Debtor's bankruptcy case.

181.   Vey's Powersports' stay violation was willful and done in complete disregard of the Bankruptcy Code.

182.   The Debtor's bankruptcy estate was damaged by the stay violation and is entitled to recover damages, plus attorneys' fees and appropriate sanctions.

## FIFTEENTH CLAIM FOR RELIEF

### (Avoidance and Recovery of Preferential Transfers – Against Vey's Powersports)

183.   The Trustee incorporates by reference the allegations of paragraphs 1 through 182, inclusive, as if fully set forth herein.

184.   Vey's Powersports is an "insider" of the Debtor within the meaning of section 547(b)(4)(B) of the Bankruptcy Code.

185.   Within one year before the Petition Date, the Debtor made the Preferential Payments to Vey's Powersports.

186.   Vey's Powersports was a creditor of the Debtor at the time of the Preferential Payments within the meaning of section 101(10) of the Bankruptcy Code.

187.   The Debtor made the Preferential Payments for or on account of antecedent debts owed by the Debtor to Vey's Powersports before such transfers were made.

188.   The Debtor was insolvent when it made the Preferential Payments.

189.   The Debtor made the Preferential Payments to an insider on or within one year before the Petition Date.

190.   The Preferential Payments enabled Vey's Powersports to receive more than it would have received if the Debtor had not made the Preferential Payments and Vey's Powersports had received payment on the debt that it was owed to the extent provided by the provisions of the Bankruptcy Code.

191.   The Trustee is entitled to avoid the Preferential Payments pursuant to section 547(b) of the Bankruptcy Code.

192.   Vey's Powersports was the initial transferee of the Preferential Payments.

30

193.    Accordingly, the Trustee is entitled to recover the sum of approximately $561,330.00 from Vey's Powersports for the benefit of the Debtor's estate pursuant to section 550(a) of the Bankruptcy Code.

## REQUEST FOR JUDGMENT

The Trustee prays for judgment as follows:

A.    On the First Claim for Relief, awarding (i) monetary damages against the Individual Defendants, jointly and severally, in an amount to be proven at trial but not less than $8,000,000 and (ii) punitive and exemplary damages in an amount that will punish the Individual Defendants, set an example, and deter similar conduct in the future.

B.    On the Second Claim for Relief, awarding monetary damages against the Individual Defendants, jointly and severally, in an amount to be proven at trial but not less than $8,000,000.

C.    On the Third Claim for Relief, for avoidance of the Prepetition Inventory Transfers and recovery of not less than $565,000 from Vey's Powersports, Stephen Cavadias, and Vicky Rosenberg, jointly and severally, pursuant to sections 548 and 550(a) of the Bankruptcy Code;

D.    On the Fourth Claim for Relief, for avoidance of the Prepetition Inventory Transfers and recovery of not less than $565,000 from Vey's Powersports, Stephen Cavadias, and Vicky Rosenberg, jointly and severally, pursuant to sections 547 and 550(a) of the Bankruptcy Code;

E.    On the Fifth Claim for Relief, for avoidance of the Cavadias Transfers and recovery of $94,000 from Stephen Cavadias pursuant to sections 548 and 550(a) of the Bankruptcy Code;

F.    On the Sixth Claim for Relief, for avoidance of the Rosenberg Cash Transfer and recovery of $12,277.50 from Robert Rosenberg pursuant to sections 548 and 550(a) of the Bankruptcy Code;

G.      On the Seventh Claim for Relief, awarding (i) monetary damages against Robert Rosenberg in the amount of $12,277.50 and (ii) punitive and exemplary damages in an amount that will punish Robert Rosenberg, set an example, and deter similar conduct in the future;

H.      On the Eighth Claim for Relief, for avoidance of the Adventure Twins Transfer and recovery of $73,500 from Vey's Powersports, Stephen Cavadias, and Vicky Rosenberg, jointly and severally, pursuant to sections 548 and 550(a) of the Bankruptcy Code;

I.      On the Ninth Claim for Relief, awarding (i) monetary damages against Vey's Powersports and Stephen Cavadias, jointly and severally, in the amount of $73,500 and (ii) punitive and exemplary damages in an amount that will punish Vey's Powersports and Stephen Cavadias, set an example, and deter similar conduct in the future;

J.      On the Tenth Claim for Relief, for avoidance of the Unauthorized Postpetition Inventory Transfer and recovery of $24,300 from Stephen Cavadias and the Cavadias Trust, jointly and severally, pursuant to sections 549 and 550(a) of the Bankruptcy Code;

K.      On the Eleventh Claim for Relief, awarding (i) monetary damages against Stephen Cavadias and the Cavadias Trust, jointly and severally, in the amount of $24,300 and (ii) punitive and exemplary damages in an amount that will punish Stephen Cavadias and the Cavadias Trust, set an example, and deter similar conduct in the future;

L.      On the Twelfth Claim for Relief, awarding monetary damages and/or sanctions against Stephen Cavadias and the Cavadias Trust, jointly and severally, in the amount of $24,300 plus reimbursement of all costs and attorneys' fees incurred by the Trustee was a result of the Unauthorized Postpetition Inventory Transfer;

M.      On the Thirteenth Claim for Relief, awarding (i) monetary damages against Vey's Powersports in an amount equal to the fair market value of the 2013

32

Mercedes Sprinter van, subject to proof at trial, and (ii) punitive and exemplary damages in an amount that will punish Vey's Powersports, set an example, and deter similar conduct in the future;

N.      On the Fourteenth Claim for Relief, awarding monetary damages and/or sanctions against Vey's Powersports in an amount equal to the fair market value of the 2013 Mercedes Sprinter van, subject to proof at trial, plus reimbursement of all costs and attorneys' fees incurred by the Trustee as a result of Vey's Powersports stay violation;

O.      On the Fifteenth Claim for Relief, for avoidance of the Preferential Payments and recovery of $561,330.00 (or the amount of the Preferential Payments proven at trial) from Vey's Powersports pursuant to sections 547 and 550(a) of the Bankruptcy Code;

P.      Awarding pre-judgment interest, as well as reasonable attorneys' fees and other costs, to the full extent allowed by law; and

Q.      Awarding such other relief as this Court may deem just and proper.

DATED:  January 3, 2023                  FINLAYSON TOFFER
                                         ROOSEVELT & LILLY LLP


                                         By:_____/s/ Jesse S. Finlayson_____
                                                    Jesse S. Finlayson

                                         Attorneys for Christopher R. Barclay,
                                         Chapter 7 Trustee